PAULDING–PUTNAM COOPERATIVE, INC., Appellant.

v.

KUHLMAN et al., Appellees.

[Cite as *Paulding–Putnam Coop., Inc. v. Kuhlman* (1997), 117 Ohio App. 3d 156.]

Court of Appeals of Ohio,
Third District, Putnam County.

No. 12–96–12.

Decided Jan. 8, 1997.

*Norman E. Cook,* for appellant.

*Kevin Kuhlmen, pro se.*

Hadley, Presiding Judge.

This appeal follows the judgment entry of the Putnam County Court finding against plaintiff-appellant, Paulding–Putnam Cooperative, Inc. ("appellant"), on its complaint and for defendant-appellees, Kevin and Joan Kuhlman ("appellees"), on their consolidated counter-complaint.

In May 1994, appellees hired Rosengarten Construction to install an inground swimming pool in the backyard of appellees' residence. During the excavation of the pool the contractors struck electrical wires buried in the backyard, severing electrical service to appellees' home. Appellant responded to the service request and spliced the electrical wires in two places, restoring electrical service to the home. At the time the repairs were made the contractor informed appellant that the area necessitating repair would be covered with a concrete patio, making future repairs highly impractical. Rosengarten Construction incurred the fee to restore electricity to the home.

In October 1994, appellees suffered a partial electrical outage resulting from an electrical service wire being "faulted." Appellant again responded to repair the electrical service. . The damaged electrical wire was located under the concrete patio that had been poured by the contractor earlier in the year. Rather than damage the concrete, appellant suggested moving appellees' electrical power meter to a more convenient location and running new electrical wires to the meter for service to the residence. This would allow appellant to completely bypass the faulted wire without damage to the concrete.

Appellees hired an electrician to move the power meter at their expense of $1,078.47. Appellant charged appellees an additional $471.43 for repairs to restore electricity to the home. Appellees refused to pay appellant the $471.43, resulting in appellant's filing a complaint in the Putnam County Court to collect its service fee. After appellant filed its complaint, appellees filed a complaint in the same court to recover the cost they incurred in moving the power meter. The basis of appellant's complaint was that appellees owed appellant for services performed. Appellees' complaint was based on the belief that the initial repair performed by appellant was not completed properly, and, thus, appellant should be responsible for the cost incurred to move the power meter.

On May 20, 1996, the matter was consolidated and heard at trial in the Putnam County Court. Appellant was represented by counsel, and appellees were represented *pro se*. Both parties presented evidence and called witnesses, with one of appellees' witnesses being Rick Rosengarten of Rosengarten Construction. The trial judge informed the parties that he, in his private practice, represented Rosengarten Construction and had Rosengarten Construction install his swimming pool, and that the company continues to service the pool. The trial judge

found that appellant was not entitled to recover on its complaint and that the appellees were entitled to recover on their counter-complaint. This appeal follows with appellant asserting two assignments of error. We will, for purposes of clarity, address appellant's second assignment of error first.

## Assignment of Error No. 2

"The judgment of the lower court is manifestly against the weight of the evidence, and is not otherwise supported by the evidence."

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus. It is "important that in [considering whether the trial court's judgment is against the manifest weight of the evidence] a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276.

Evidence presented by the appellant revealed that the October 1995 partial power outage was the result of one wire being "faulted" into the ground underneath the area where the concrete patio had been poured earlier in the year. Appellant contends that the wire was not damaged in the same place in October 1995 as it was in May 1995. Appellant argued that the electrical service wire to the residence was exposed in more than one place in May 1995, when the contractor severed the wires. As a result, appellant contends that the contractor must have subsequently damaged the wire before pouring concrete over the area, and corrosion to the wire caused the damage that resulted in the October power failure.

Yet appellee and the contractor testified that the electrical wires where the October power failure occurred may have been exposed at one time but were never exposed after appellant restored the electrical service in May 1995. There was also competent, credible evidence that appellant's repair personnel did not thoroughly examine the entire route of exposed wire in May, 1995, including the area of wire where the October power failure occurred. Rather, they merely repaired two areas where the electrical service wire was obviously severed before the wire was reburied by the contractors.[1] Appellant had the equipment (*i.e.*, a

---

1. The following is an excerpt from the trial transcript of the examination by the court of Eugene Niese, lineman first class supervisor and the appellant's employee who repaired the electrical wires in May, 1995.

fault indicator) to detect any type of damage to the wire even if it was not readily observable to the human eye, including nicks in the wire. Yet they did not utilize that equipment until October, 1995, when the wires were buried under concrete. Neither party disputes the fact that the damage to the electrical wires that caused the October partial power outage was the result of an electrical wire being nicked. After the wire was buried moisture was able to come into contact with the metal, corroding the wire to the point that electrical service was eventually lost from that wire. The only dispute between the parties is when the wire was nicked: before or after the appellant's repair personnel were at the site in May 1995.

We find from the foregoing that there existed competent, credible evidence setting forth that the damage to the electrical wire occurred before appellant's repair personnel were present at the site in May 1995. Thus, the trial judge correctly stated that "the electric company did not adequately check the remainder of the wire to assure that there was no damage thereto." Appellant's second assignment of error is overruled.

Assignment of Error No. 1

"The lower court committed prejudicial error by not disclosing to the parties, and counsel before the trial commenced, that the court had an attorney-client relationship with the appellee's [*sic* ] only witness; and that said witness had constructed the court's swimming pool and services the same."

■ Appellant argues that pursuant to the Code of Judicial Conduct the trial judge committed prejudicial error by not recusing himself immediately after discovering that appellees' witness, Rick Rosengarten of Rosengarten Construction, was the judge's client, who had also installed a swimming pool for the judge at his residence, and who serviced the judge's pool.[2]

Although the judge did not immediately recuse himself, he did state the following before the witness began testifying:

> "Court: Your equipment indicated [the electrical wire was damaged] or your eyes indicated it?
> "Mr. Niese: Right, you could see it was dug up, yes.
> "Court: Well, did you do a check on the rest of the line to see whether there was any damage?
> "Niese: No, we did not. No, we did not after the repairs, no.
> "Court: Even though some of it was exposed?
> "Niese: Right."

2. Rick Rosengarten was not appellees' only witness, as appellant argues in its assignment of error. Appellee, Kevin Kuhlman, also testified on his own behalf.

" * * * I'm going to have to disclose to both parties here that Mr. Rosengarten, their construction firm, is a client of mine. I didn't know he was going to testify. He also put in my pool. He also services my pool. I don't know what else to tell you. I didn't know he was going to be a witness here, but why don't we go forward with his testimony and if you feel we have to get someone else, we can."

The appellant did not, however, object to the trial court judge hearing the case until this appeal.

"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus.

In fact, R.C. 2937.20 provides the avenue appellant could have utilized if it had any objection to the trial judge hearing the case. R.C. 2937.20[3] states in relevant part:

"When a magistrate or a judge of a court inferior to the court of common pleas is interested in a cause pending before the magistrate or judge, is related to or has a bias or prejudice either for or against a party to the cause pending before the magistrate or judge or to a party's counsel, or is otherwise disqualified to sit in a cause pending before the magistrate or judge, on the filing of an affidavit of such party or counsel, setting forth the fact of that interest, relationship, bias, prejudice, or disqualification, the clerk or deputy clerk of the court, or the magistrate, shall enter the filing of the affidavit on the docket in that cause, and, forthwith notify the presiding judge of the court of common pleas * * *, who shall proceed without delay to examine into the affidavit, and, if the judge finds from all the evidence that the alleged interest, relationship, bias, prejudice, or disqualification exists, the judge shall designate another magistrate of the township or county, or another judge of the inferior court, or the court of common pleas to hear and determine the cause. * * * The affidavit shall be filed not less than twenty-four hours before the time set for the hearing of the cause, unless such filing is unavoidably prevented."

██ Appellant's argument is that the judge's delay in informing the parties of his relationship with the witness prevented it from complying with R.C. 2937.20. This argument is without merit. In addition merely to placing an objection on the record to preserve the issue for appeal, appellant could have easily complied

---

**3.** The following version of R.C. 2937.20 was in effect until November 20, 1996. Following that date the code section was renumbered to 2701.031 pursuant to Sub.S.B. No. 263, 146 Ohio Laws, Part VI, 10628.

with the terms of the statute if it sought to disqualify the trial judge. The terms of R.C. 2937.20 make clear that an affidavit must be filed not less than twenty-four hours before the trial of the cause, *"unless such filing is unavoidably prevented."* The discovery that the judge had a professional relationship with one of the witnesses was not disclosed until the trial had started.[4] Obviously, filing the required affidavit twenty-four hours before the start of the trial was unavoidably prevented. Yet appellant never filed the required affidavit or otherwise objected to the judge hearing the case. Rather, it waited until the conclusion of the trial and for the court to reach its verdict to allege judicial misconduct in this appeal. The trial judge made clear to both parties that if they wanted him to recuse himself from the trial, *he would do so.* By not placing an objection on the record or complying with the terms of R.C. 2937.20, appellant waived its right to allege prejudicial error by the trial court on appeal. R.C. 2937.20 expressly provided the necessary procedure that should have been followed.

Without asserting an objection at trial to disqualify the trial judge, appellant has waived all but plain error with respect to this issue. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 493, 653 N.E.2d 304, 323. "Implementation of the plain-error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223, 18 O.B.R. 281, 283, 480 N.E.2d 802, 805.

█ We fail to see, as appellant argues, that the judge's impartiality was "reasonably questioned by the extent and manner in which he interrogated Kuhlman and his witness Rosengarten."[5]

During a trial, "[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). "A court reviewing a trial court's interrogation of witnesses and comments will reverse only if the trial court abused its discretion." *State v. Wasmer* (Mar. 16, 1994), Jackson App. No. 714, unreported, 1994 WL 90400; *State v. Davis* (1992), 79 Ohio App.3d 450, 455, 607 N.E.2d 543, 546–547. "Even if the trial court did abuse its discretion in

---

4. Appellant's argument that the trial court judge could have avoided this issue by advising the parties of his professional relationship by informing the parties when he first learned that Rosengarten was going to be a witness after appellant's opening statement is without merit. The trial had begun, and appellant could not have filed the required affidavit any earlier than twenty-four hours before the time set for trial.

5. Appellant argues that the trial court committed prejudicial error, not plain error. However, seeing no other grounds as a basis for error, we are forced to apply the plain error doctrine to the issue of impartiality. Impartiality encompasses all the circumstances envisioned by Canon 3 of the Code of Judicial Conduct, entitled "A Justice Shall Perform the Duties of Judicial Office Impartially and Diligently."

questioning the witnesses, such error would not rise to the level of plain error." *Wasmer*, Jackson App. No. 714.

Notwithstanding, a review of the trial transcript reveals that the trial judge's interrogation of the witnesses in the case was not improper and, thus, not an abuse of discretion. This trial occurred in the county court with *pro se* litigants on one side of the dispute. The trial judge merely assisted the parties through the trial with explanations of how a trial was procedurally conducted. Questions asked by the judge to the witnesses were merely to assist the judge, as the trier of fact, in making a correct and impartial decision.

As stated above in the discussion of appellant's second assignment of error, the manifest weight of the evidence supported the verdict reached by the trial court. The testimony of Rick Rosengarten was essentially duplicative of the testimony of Kevin Kuhlman. Therefore, even if we were to eliminate all of Rick Rosengarten's testimony, the manifest weight of the evidence supports the trial court's decision. We fail to see how a manifest miscarriage of justice can occur when the manifest weight of the evidence supports the verdict.

We, therefore, overrule appellant's first assignment of error, and affirm the judgment of the trial court.

*Judgment affirmed.*

EVANS, J., concurs.

BRYANT, J., dissents.

THOMAS F. BRYANT, Judge, dissenting.

I dissent because I believe it was incumbent on the trial judge to recuse himself in the circumstances, rather than casting upon counsel the duty to institute formal disqualification proceedings as the majority would require. Canon 3(C)(1)(c)(i) requires a judge to disqualify himself in a proceeding in which the judge has a financial interest or any other interest that could be substantially affected by the outcome of the proceeding. If the parties agree, in writing, that the judge's relationship is immaterial or that the judge's disqualification should be waived, Canon 3(D) requires the written agreement to be incorporated in the record.

The judgment in this case hinges on the court's assessment of the credibility of a witness disclosed to be in a multiple contractual relationship with the judge. Prior to the presentation of evidence, the judge knew that this witness would testify. However, it was not until after plaintiff rested his case in chief and

defendant called his witness to the stand that the judge disclosed his relationship with that witness.

The central issue in this case was whether the Paulding–Putnam's repairs were faulty or whether Kuhlman's contractor, the witness with whom the judge had a financial relationship, caused additional damage to the exposed wires during the completion of the pool. The contractor stated that his company severed the wires in two places and denied being the cause of Kuhlman's subsequent electrical problems. However, Paulding–Putnam's witness testified that the second fault occurred approximately twelve feet from the original repaired conductors. Furthermore, Paulding–Putnam's witness testified that the second fault was probably attributable to damage to the insulation of exposed wires.

Because the judge had to assess the credibility of these two witnesses, one with whom he shared a contractual relationship, the impropriety by conflict of interest arising from financial basis is apparent. Consequently, I would affirm appellant's first assignment of error and reverse the judgment of the Putnam County Court of Common Pleas.