[Cite as *Murray v. Murray*, 2018-Ohio-3242.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| CATHERINE MARION MURRAY, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-P-0070** |
| T. ANDREW MURRAY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2007 DR 00183.

Judgment: Affirmed.

*Ralph C. Megargel*, Megargel & Eskridge Co., LPA, 231 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Leslie S. Graske*, 120 East Mill Street, Suite 405, Akron, OH 44308 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Catherine Marion Murray, appeals the Judgment Entry of the Portage County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee, T. Andrew Murray, custody of the parties' minor child, Annika Murray. The issue before this court is whether a child's best interest determination is supported by the record where the trial court emphasized that it would be best for the child to be reunited with her sibling without expressly discussing the other best interest factors. For the following reasons, we affirm the decision of the court below.

**{¶2}** The parties were formerly married and are the parents of two children: Eve Hanna Murray (dob 04/14/00) and Annika Colebrook Murray (dob 10/08/02). On June 18, 2008, the parties were granted a divorce and Catherine was awarded custody of the children.

**{¶3}** On January 13, 2017, Andrew filed a Motion to Modify Parental Rights, asking the domestic relations court "to modify parental rights by naming him as the custodial parent of the parties' two minor children" on the grounds that Catherine "has made a mockery of prior court orders by ignoring them and failing to provide any visitation opportunities for the defendant, and further has engaged in a pattern of behavior to alienate the children from movant."

**{¶4}** On April 4, 2017, a hearing was held on Andrew's Motion at which Catherine failed to appear.

**{¶5}** On April 6, 2017, the domestic relations court granted Andrew custody of Eve but continued the proceedings with respect to Annika.

**{¶6}** On June 14 and July 21, 2017, additional hearings were held before the domestic relations court at which the following testimony was given:

**{¶7}** Andrew testified that he lives in Aurora, Ohio. Annika has Rett syndrome, a genetic neurological disorder which renders her "profoundly disabled":

> She cannot --- she's not auditory, she's not ambulatory. * * * [I]t's difficult for her to acknowledge what decision she's making and requires a lot of time and care and understanding from the caregiver to learn how to read her, so to speak. And she does require 24/7 care and I'm very aware of this because for the first many years of her life, I was there for that.

**{¶8}** Andrew also testified regarding the special equipment necessary for Annika's care, her medications, and the issues with feeding her.

2

**{¶9}** Andrew testified that he has had custody of Eve for about two and a half months. He received a voice message from Catherine that she was going to "wash her hands" of the situation with Eve, and found that Catherine had abandoned her in the house where they were living and moved in with her (Catherine's) boyfriend. Eve was found by local police living in "inadequate" conditions with drug paraphernalia present and took her to a placement home. Andrew took custody of Eve from the placement home. At this time, Catherine did not allow him to see Annika. According to Andrew, Eve had been acting as Annika's primary caregiver.

**{¶10}** Andrew testified that he is willing and committed to educating himself and adjust his lifestyle so as to be able to care for Annika. His mother, a registered nurse, and his wife, who works at home, are both willing to support him in caring for Annika. Eve is also available to provide first-hand knowledge of Annika's situation, although he would not rely on her to be Annika's caregiver.

**{¶11}** Catherine testified that she has resided in Savannah, Georgia, since Annika was about eight- or nine-years-old and has been her primary caregiver for her whole life. She testified regarding Annika's condition and seizure disorder. Annika attends a public school under an individualized education program. Catherine discussed Annika's therapists and doctors. Annika uses specialized equipment for bathing, standing, and transportation.

**{¶12}** Catherine testified that Annika vocalizes but does not speak. In addition to grunts or groans, Annika will communicate by raising an eyebrow or through a look. She does not always indicate her needs such as hunger/thirst, pain, or discomfort, and one has to guess at what she is trying to communicate. "It would take quite some time

3

and some training to show people * * * how to move her, how to walk with her, and how to keep her comfortable and how to understand her."

{¶13} Catherine testified that Annika sleeps with a video monitor in case she has seizures during which she is able to injure herself.

{¶14} Catherine has "specific concerns" about Andrew's ability to care for Annika, such as his mental well-being (he is prone to domestic violence) and "he doesn't seem to do things that an adult father would do to take care of their family." Catherine testified that, while she was married to Andrew, he was neglectful of Annika's care and has been convicted multiple times of child endangering with respect to Annika.

{¶15} Catherine denied impeding Andrew from visiting the children. Although she would not send the children to Ohio to visit him, he only came to Georgia three times in five years to visit them.

{¶16} Catherine is a massage practitioner which is important for Annika's care as her muscles will atrophy over time. She is in a relationship with the medical director of the cancer center in Savannah and he is willing to assist in caring for Annika.

{¶17} Catherine admitted that there were times that Eve cared for Annika, but she does not trust Eve and is uncertain how close Eve and Annika are.

{¶18} Catherine denied that it was ever her intention to disregard court orders, but she was struggling as a single mother and could not afford to buy plane tickets.

{¶19} Andrew further testified regarding his convictions for child endangering and disorderly conduct. On one occasion, he rode Eve on his scooter wearing a bicycle helmet instead of a motorcycle helmet. On another occasion, Annika fell out of a chair while in his custody. Catherine was the complaining witness on both occasions. The disorderly conduct involved an altercation with his brother.

4

{¶20} Andrew testified that many of the same doctors who cared for Annika when she lived in Ohio are still available to manage her care. He would also be willing for Annika to have extended visits with Catherine and to assist in transportation.

{¶21} Eve testified that, when she lived with her mother, she, as well as a neighboring girl, would assist in caring for Annika, including administering medication. Eve testified that her mother took very good care of Annika and put her needs first.

{¶22} Eve also testified regarding the circumstances in which she was abandoned by her mother.

{¶23} On September 6, 2017, the domestic relations court issued a Judgment Entry, awarding Andrew custody of Annika. The court stated:

> The Court finds the child, Annika Murray, is developmentally challenged. She cannot speak, her movements are restricted and she is confined to a wheelchair. Much care is required for Annika and both Plaintiff and Defendant are able and willing to provide the needed care for her. Both parties also want custody of the child.
>
> The Court believes that the separation of Annika from her sister, Eve, has had a negative effect on Annika and it would be best to have the two sisters together again. Eve has provided much of the needed care for Annika.
>
> Accordingly, the Court finds it is in the best interest of Annika for the Defendant to be the residential parent and legal custodian.

{¶24} On October 6, 2017, Catherine filed a Notice of Appeal. On appeal, she raises the following assignment of error:

{¶25} "[1.] The trial court erred by awarding custody of the minor child Annika Murray, DOB 10/08/2002, to the Defendant-Appellee, T. Andrew Murray when such an award was against the manifest weight of the evidence and not in the child's best interest under Ohio Revised Code § 3109.04(F)(1)."

5

{¶26} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).

{¶27} "In determining the best interest of a child pursuant to this section * * *, the court shall consider all relevant factors, including, but not limited to: * * * (d) [t]he child's adjustment to the child's home, school, and community; (e) [t]he mental and physical health of all persons involved in the situation; * * * (h) whether either parent * * * previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense." R.C. 3109.04(F)(1). "Though there should be some indication in the judgment entry that the trial court considered the best interests of the child pursuant to R.C. 3109.04(F), there is no requirement it make specific findings in its entry as to each and every factor." *Brandt v. Brandt*, 11th Dist. Geauga No. 2012-G-3064, 2012-Ohio-5932, ¶ 13.

{¶28} A trial court enjoys broad discretion in a child custody modification proceeding and "the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Although broad, the exercise of its discretion "must be guided by the language set forth in R.C. 3109.04" and its "determination in a

6

custody proceeding is * * * subject to reversal upon a showing of an abuse of discretion." *Id.*

{¶29} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." (Citation omitted.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *Baxter v. Baxter*, 27 Ohio St.2d 168, 173, 271 N.E.2d 873 (1971) ("[a]buse of discretion connotes something more than merely being against the manifest weight of the evidence").

{¶30} Catherine argues that the trial court erred "balancing the factors set forth in Ohio Revised Code § 3109.04(F)(1) in determining the best interest of the minor child by not considering the specific, special needs of the profoundly disabled minor child, all of the best interest factors * * *, nor the extenuating circumstances of the parties * * *." Appellant's brief at 10.

{¶31} Catherine maintains that "every piece of evidence presented to the trial court demonstrated that Annika was well adjusted to her home, school, and community in Georgia with [her mother]" and that the domestic relations court "completely failed to consider" her physical and mental health while "acknowledging the lack of appropriate care available to Annika if she were to be relocated to live with her father." Appellant's brief at 12.

{¶32} Annika's adjustment to her home, school, and community in Georgia is a valid factor for the lower court's consideration, but not one that necessarily merits considerable weight in these circumstances. Given her disability, her adjustment to any given situation will be heavily dependent on her caregiver. Also, Annika spent the first eight or nine years of her life in Ohio without any apparent adjustment issues.

7

{¶33} Catherine's point regarding the lack of appropriate care in Ohio is dubious. The lower court judge did "doubt * * * that there's any doctor up here that specializes in [Rett syndrome]," that is, he doubted one would be able "to find [a specialist] in Ravenna." Against the court's doubt, we must consider Andrew's testimony that the neurologist who treated her when she lived in Ohio is still practicing at the Cleveland Clinic and Catherine's own admission that the medical facilities available in Cleveland were not inferior to those in Savannah. It should also be recognized that the situation in transferring Annika's medical care from Georgia to Ohio would not present any more of a challenge than when it was transferred from Ohio to Georgia.

{¶34} Catherine asserts that the lower court "totally failed to consider" that Andrew "has proved over and over again throughout the history of this matter that he is neither willing nor capable of being a proper caregiver for Annika," noting in particular his convictions for child endangerment.

{¶35} There is no real evidence that the lower court failed to consider this evidence. Both Catherine and Andrew testified regarding the charges/convictions and the Complaints and Sentencing/Journal Entry were entered into evidence. That the court did not mention the convictions in its ruling suggests rather that the court did not consider the evidence significant in its decision to grant custody to Andrew.

{¶36} This court has recognized, as have many of the other appellate districts, that, in making a custody determination, "the trial court is not required to expressly consider or balance [the R.C. 3109.04(F)] factors before awarding custody," nor is the court "required to make express findings of fact unless it has a Civ.R. 52 motion before it as long as there is some indication in the judgment entry that the trial court considered the best interests of the children." *In re L.R.S.*, 11th Dist. Portage Nos. 2016-P-0050

8

and 2016-P-0051, 2017-Ohio-2604, ¶ 25 (cases cited); *Giovanini v. Bailey*, 9th Dist. Summit No. 28631, 2018-Ohio-369, ¶ 13 ("[w]hile [R.C. 3109.04] does mandate consideration of each factor by the trial court, the court need not explicitly reiterate its findings with regard to those factors absent a Civ.R. 52 request for findings of fact and conclusions of law") (citation omitted); *Girdlestone v. Girdlestone*, 5th Dist. Stark No. 2016 CA 00019, 2016-Ohio-8073, ¶ 34 ("there is no requirement that a trial court separately address each best interest factor enumerated in R.C. 3109.04," and "[a]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant factors listed in R.C. 3109.04(F)(1)").

{¶37} In the present case, Catherine did not make a request for specific findings pursuant to Civil Rule 52.

{¶38} In considering the conduct of both parties, it should be noted that Catherine had been found to have "steadfastly refused to provide visitation" to Andrew resulting in her being found in contempt and a warrant issuing for her arrest and that her conduct evidences some disregard for Eve's welfare. Catherine protests that the "court failed completely to consider that [she] was not financially or physically able to comply with the court's order." Appellant's brief at 13. As with the lower court's alleged failure to consider Andrew's child endangering convictions, we presume that the court duly considered the evidence of Catherine's failure to comply with the court's orders and weighed that evidence accordingly in the exercise of its discretion.

{¶39} Finally, Catherine contends that the court's finding that "it would be best to have the two sisters together again" is "completely without evidentiary support." Appellant's brief at 14. She notes that Annika "has not and cannot express any desire

9

to be reunited with her sister" and that, at no point during Eve's testimony, "did she indicate that she missed Annika."

{¶40} We find no abuse of discretion. A child's "interaction and interrelationship" with her siblings is a recognized factor in determining the child's best interests. R.C. 3109.04(F)(1)(c). There was evidence in the record that Eve is capable of and has actually cared for Annika in the absence of other supervision. While it was not expressly recognized, it is evident that Eve has lived with Annika for as long as Catherine has lived with her. We do not find the lack of direct evidence of affection between the sisters sufficient to undermine the court's judgment. Admittedly, it would have been helpful if the lower court had discussed the emphasis placed on reuniting the sisters in relationship to the other evidence in the record but, as noted above, it was not required to do so. *Compare Meyer v. Anderson*, 2d Dist. Miami No. 96CA32, 1997 WL 189383 (Apr. 18, 1997).[1]

{¶41} The sole assignment of error is without merit.

{¶42} For the foregoing reasons, the Judgment Entry of the Portage County Court of Common Pleas, Domestic Relations Division, granting Andrew custody of Annika, is affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

---

1. "While we concede that the court could have been much more conscientious about identifying the legal standards that it was applying, we know of no authority, and Appellant points to none, for the proposition that R.C. 3109.04(E)(1)(a)(iii) requires the court to cast the whole of its reflection on the case into words. * * * In its entry the court explained that it decided to place Brandon with Anderson 'because she will have more time with him, she is nurturing and Brandon will be with his eight year old half-brother, Jimmie.' * * * We believe that this statement, while perhaps only minimally sufficient, constitutes a reference 'to some evidence which supports the elements of the applicable statute.'" *Meyer* at *4.

10