[Cite as *Sassya v. Morgan*, 2019-Ohio-1301.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| LEBY SASSYA, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2018-T-0013** |
| - vs - | : | |
| CAROL LYNNE MORGAN (f.k.a. SASSYA), | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2011 DS 00293.

Judgment: Affirmed.

*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Plaintiff-Appellee).

*Carol Lynne Morgan (f.k.a. Sassya)*, pro se, 878 Indianola Road, Youngstown, OH 44512 (Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Carol Lynn Morgan f.k.a. Sassya, appeals the January 10, 2018 Judgment Order of the Trumbull County Court of Common Pleas, Domestic Relations Division, overruling her objections to and confirming its adoption of the August 11, 2017 Magistrate's Decision which granted plaintiff-appellee, Leby Sassya's, motion to modify custody of the parties' minor children. For the following reasons, we affirm the decision of the court below.

{¶2} On July 11, 2013, Sassya and Morgan were granted a divorce in the Trumbull County Court of Common Pleas, Domestic Relations Division. According to the terms of the Decree of Divorce, Morgan was "designated residential parent of the children, [H.S.] [and] [Y.S.]," and Sassya was "designated residential parent of the children, [Sa.S.], [T.S.] and [So.S.]." The parties were ordered "to comply with this Court's Parenting and Companionship Guidelines on a reciprocal basis."

{¶3} In *Sassya v. Morgan*, 2014-Ohio-3278, 17 N.E.3d 104 (11th Dist.), this court reversed the Decree of Divorce with respect to the property settlement.

{¶4} On August 22, 2016, Sassya filed a Motion to Show Cause (Contempt) based, inter alia, on Morgan's willful denial of Sassya parenting time with the minor children of whom she was designated residential parent.

{¶5} On September 12, 2016, Attorney Marc C. Cervello was appointed to represent Morgan. Cervello's representation of Morgan was limited to defending her against the Motion to Show Cause.

{¶6} On September 16, 2016, Attorney Charles Draa was appointed as the Guardian ad Litem "to investigate parenting time problems."

{¶7} On January 5, 2017, Sassya filed a Motion for Reallocation of Parental Rights/Motion to Show Cause based on the claim that Morgan "engaged in a pattern of conduct in which she continuously and willfully denies the Plaintiff parenting time with the minor children" and "engaged in behaviors to alienate the children from the Plaintiff."

{¶8} On January 24, 2017, Sassya filed a Motion for Custody Evaluation of the children.

{¶9} On March 9, 2017, the domestic relations court granted the Motion for Custody Evaluation and ordered Dr. Harvey Kayne to be retained for purposes of conducting the evaluation.

{¶10} On May 10, 2017, Sassya filed another Motion to Show Cause (Contempt) since Morgan "continued to willfully deny the Plaintiff Father parenting time with the minor children."

{¶11} On June 9, 2017, a hearing was to be held on Sassya's contempt and custody motions. Although present prior to the start of the hearing, Morgan did not participate in the hearing. Also prior to the hearing's commencement, Sassya withdrew the pending contempt motions and the matter proceeded solely on the Motion for Reallocation of Parental Rights. On Sassya's behalf, testimony was presented from Dr. Harvey Kayne, Julie Rudolph of Mahoning County Children Services Board, H.S., Y.S., and Leby Sassya.

{¶12} On June 15, 2017, an In Camera Interview of each of the minor children (Sa.S., T.S., and So.S.) was conducted.

{¶13} On June 29, 2017, the hearing on the reallocation motion continued. Morgan was present and testified on her own behalf. The Guardian ad Litem (Attorney Draa) also testified and Sassya gave rebuttal testimony.

{¶14} On August 11, 2017, a Magistrate's Decision was issued and was approved by the domestic relations court. The magistrate concluded that a change of circumstances of the children and the residential parent has occurred in that Morgan "has willfully, and without justifiable cause, denied substantial parenting time of the Plaintiff-Father"; that "a modification is necessary to serve the best interest of the

3

children"; and that "the harm likely to be caused by a change of environment for the minor children is outweighed by the advantages of the change of environment to the children."

{¶15} The magistrate made the following relevant findings:

> The Plaintiff-Father is requesting that this Court name him as the residential parent and legal custodian of the parties' minor children. The Defendant-Mother is requesting that this Court retain her as the residential parent and legal custodian.

> The Court, in the presence of the Guardian ad Litem, has interviewed the minor children in chambers regarding their wishes and concerns as to the allocation of parental rights and responsibilities. The children's wishes and concerns as expressed to this Court are considered in the Court's analysis, along with the report of Dr. Harvey Kayne pertaining to the statements made to him by the minor children, and his evaluation of the children.

> The children are very closely bonded to Defendant-Mother. Conversely, according to Dr. Kayne, the children reportedly saw no positive virtues in their Father, and thus their relationship with their Father appears to be severely strained. Dr. Kayne described the children as "enmeshed" in their mother's life, and the father as "the man they learned to fear." He reported that despite there being no documented history of physical abuse of the children, the children believe that they have been abused, and express that they are afraid of their father. They were, however, unable to give details of certain allegations, and despite expressing this fear, he found it clinically significant they did not seem [at] all fearful, anxious or distressed when telling the stories of their abuse or discussing the matter of visitation with their father.

> Despite the children's presentation to Dr. Kayne in this manner, according to the parties' oldest sons, [H.S.] and [Y.S.], when the children visited with the Father, they were happy to see him, interacted well with him, and seemed to enjoy their time together. The children also seem to have a positive relationship with their older brothers, and their brothers are very capable of and willing to play a significant role in assisting the Plaintiff-Father in caring for them when with the Plaintiff-Father. [H.S.] and [Y.S.] appear to be very positive influences and role models for their younger siblings.

4

The children are adjusted to their present environment in the Defendant-Mother's home. They have been in the Defendant-Mother's custody since the parties' separation. They seem to have a good relationship with the Defendant-Mother. They do well in their current school in the Boardman School District, and they have friends. While they are not involved in any extracurricular activities, the Defendant-Mother testified that she intends to enroll [T.S.] in football.

\* \* \*

Dr. Kayne's report indicates that there was nothing in his analysis that would cause him to conclude that either parent was mentally ill. He noted some significant personality issues that may rise to the level of a disorder that are clearly present in the Defendant-Mother, including hypersensitivity, mistrust, and a sense of victimization and that these issues are negatively impacting her interpersonal and other functioning. Dr. Kayne testified that these personality issues are an enduring and lifelong pattern, and that the Defendant-Mother lacks insight that these matters present a problem for her.

\* \* \*

The Plaintiff-Father is the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. The Defendant-Mother has refused to comply with this Court's orders of visitation and companionship. The Plaintiff-Father has indicated that this has been a substantial issue over the years since the parties' divorce. Even when the visitation has been ordered to be supervised in a public location, per this Court's most recent orders entered in this case, the Defendant-Mother has failed and refused to comply with the court orders. The result is that the children have been deprived of significant and important relationships, not only with the Plaintiff-Father, but also with their oldest siblings, [H.S.] and [Y.S.], who have been in the Plaintiff-Father's custody since the parties' separation and divorce.

Defendant-Mother asserted that the Plaintiff-Father has deprived her of parenting time with the parties' oldest sons that have been in his custody, and stated that she has had "no visits" with [H.S.] and [Y.S.] in 5 years. However, the evidence presented, including the testimony of the children, shows that the Defendant-Mother is false and that she has had visits with the children. The Plaintiff-Father has encouraged the relationship between the oldest

5

sons and the Defendant-Mother. In fact, [H.S.] continues to see the Defendant-Mother, and comes over to her home and sees his siblings. It appears, rather, that [H.S.] and [Y.S.]'s relationship with their mother has declined due to her behaviors. The Plaintiff-Father continued to take [Y.S.] to visitation exchanges, even when the Defendant-Mother would not show up with the three youngest children, in an effort to ensure contact between [Y.S.] and the Defendant-Mother. However, the Defendant-Mother would fail to show up or would fail to take [Y.S.] for visits.

The Plaintiff-Father is current in his child support payments. The Defendant-Mother asserted that there is an existing arrearage from prior orders. However, she presented no evidence as to the amount of the purported arrearage and no evidence as to the nature of or circumstances as to when the arrearage was accumulated. She admitted that the Plaintiff-Father has been current in his obligation.

The Defendant-Mother has repeatedly asserted that the Plaintiff-Father has abused and continues to abuse the minor children. She further asserts that the Plaintiff-Father has abused and stalks her. She presented a Civil Protection Order entered by the Mahoning County Domestic Relations Court in support of her assertions. It is noted, in fact, that there have been two Civil Protection Orders entered by the Mahoning County Domestic Relations Court against the Plaintiff-Father, including one in 2011 and the most recent being 2016. Each of these restricted and currently restrict the Plaintiff-Father from having contact with the Defendant-Mother. However, this Court does not find the existence of these orders alone to be conclusive evidence of abuse of the children by the Plaintiff-Father. Rather, it is incumbent upon this Court to hear the evidence and draw its own conclusions based on the evidence presented to it as to whether or not there is reason to believe that the Plaintiff-Father has acted in a manner resulting in any of the children being an abused or neglected child. * * * Thus, this Court must make a determination as to whether the minor children are in danger of abuse or neglect while in the care of the Plaintiff-Father, as asserted by the Defendant-Mother, or whether the Defendant-Mother has utilized her assertions of abuse and neglect in order to justify her behaviors in alienating the Plaintiff-Father from the children. It is the finding of this Court that it is the latter that is the case, and that there is **no** reason to believe that the Plaintiff-Father has acted in a manner resulting in any of the children being an abused or neglected child. * * *

6

{¶16} Accordingly, the magistrate, inter alia, ordered that Sassya be "designated as the residential parent and legal custodian of the parties' minor children."

{¶17} On August 25, 2017, Morgan filed Objections to the Magistrate's Decision of August 11, 2017. On December 13, 2017, Morgan filed her Supplement to Objections to Magistrate's Decision. On December 15, 2017, Morgan filed a Corrected Supplement to Objections to Magistrate's Decision.

{¶18} On January 10, 2018, the domestic relations court overruled all pending objections to the Magistrate's Decision.

{¶19} On February 6, 2018, Morgan filed a Notice of Appeal. On appeal, she raises the following assignments of error:

{¶20} "[1.] The trial court erred, as a matter of law, by overruling appellant's objection that the custody trial had been commenced without appellant receiving proper notice of such, in violation of her rights to due process."

{¶21} "[2.] The trial court's decision ordering that some of the parties' exchanges of the minor children occur in a specific Giant Eagle parking lot is both an abuse of discretion and ignores the facts presented."

{¶22} "[3.] The trial court erred to the prejudice of the appellant and violated her rights to due process of law by failing and refusing to permit appellant to testify on her own behalf."

{¶23} "[4.] The trial court erred to the prejudice of the appellant and violated her due process rights by failing to permit her to call the child, [Sa.S.], as a fact witness."

{¶24} "[5.] The trial court's finding that appellee should be established as residential parent of the children due to appellant's interference with visitation is against the manifest weight of the evidence."

{¶25} In custody matters, the trial court enjoys broad, but not unlimited, discretion. An "appellate court may not merely substitute its judgment for that of the trial court," which "is subject to reversal upon the basis of a showing of abuse of discretion." *Baxter v. Baxter*, 27 Ohio St.2d 168, 172-173, 271 N.E.2d 873 (1971).

{¶26} Also important to the resolution of several issues raised in the present appeal is the proposition, "long recognized" by the Ohio Supreme Court "in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

{¶27} Under her first assignment of error, Morgan claims the magistrate/domestic relations court violated her due process rights by proceeding with the custody hearing on June 9, 2017. Morgan contends that she "strenuously objected" to the hearing going forward because "she was not aware that a hearing would be conducted on [the custody] motion on that date and, therefore, was not prepared to go forward on that motion." Appellant's brief at 8.

{¶28} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler*, 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d

8

420, ¶ 48 (recognizing the "due process of law" provision contained in Section 16, Article I of the Ohio Constitution "as the equivalent of the 'due process of law' protections in the United States Constitution"). "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that the defendant has reasonable opportunity to prepare for the specific issues presented." *Morjock v. Morjock*, 7th Dist. Mahoning No. 03-MA-146, 2005-Ohio-1768, ¶ 19. "However, the concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Hochhausler* at 459.

**{¶29}** A hearing on both the custody and contempt issues was originally scheduled for June 8, 2017, as reflected in the Magistrate's Order of March 2, 2017: "This matter came on for hearing on several pre-trial issues * * * regarding the upcoming trial on the contempt & custody issues set on 6-8-17." The magistrate further advised the parties that "an additional ½ day[1] trial either prior to or after the already scheduled 6-8-17 full day trial date" would be set. On May 10, 2017, the court's docket reflects that a hearing on the "motion for contempt" was set for June 9, 2017. On May 11 (the next day), the docket reflects that the "trial to court scheduled for 06/08/2017 * * * has been rescheduled" for June 29, 2017.

**{¶30}** At the June 9 hearing, the magistrate indicated that trial would proceed on the custody motion in light of Sassya's dismissal of pending contempt motions. Morgan was in court that day but left the courthouse prior to the start of the hearing. The record indicates that Morgan became upset because the court was going to hear evidence on

---

1. The court's docket for March 2, 2017, provides: "matter set for 2nd full day trial per the 3/2/17 court hearing."

9

the custody motion and/or because of a proposal to allow Sassya visitation with the minor children. There was no formal objection on the record to the hearing proceeding on June 9 nor was an objection raised at the subsequent June 29 hearing. At this time, the magistrate noted for the record: "Ms. Morgan, that was the hearing that you got very angry. You left and I continued the hearing for the rest of the day. The Plaintiff or the Movant-Defendant put on his case, and I listened to his case, and you chose not to be here."

{¶31} We find no denial of Morgan's due process rights. The March 2 Magistrate's Order fairly indicated that the custody and contempt issues would be heard jointly over the course of a day and a half or two days. Combining the custody and contempt issues was also reasonable in light of the fact that the grounds for the reallocation of parental rights were the same grounds underlying the contempt motions. Admittedly, there was some confusion as to which motions would be addressed at the June 9 hearing[2], such confusion, however, was not prejudicial to Morgan's interests. As just noted, the contempt and custody issues were substantively similar. Morgan voluntarily refused to participate in the proceedings on June 9, thus depriving herself of the opportunity to hear and oppose Sassya's evidence as well as the opportunity to explain why it would be inequitable to proceed with the hearing on that date.[3] At the second scheduled day of hearings on June 29, Morgan was able to present her testimony in opposition to the motion for reallocation of custody. In sum, Morgan

---

2. Whereas Morgan believed that only contempt issues would be addressed, her appointed counsel believed that only custody issues would be addressed and so did not appear for the hearing.
3. In her Objections to the Magistrate's Decision, Morgan contended that "she did not leave of her own free will and not return as written in the Magistrate's Decision." The magistrate and Guardian ad Litem testified contrariwise, and the domestic relations court accepted their testimony inasmuch as Morgan's objection was overruled.

deprived herself of the opportunity to participate at the June 9 hearing (and, so, cross-examine Sassya's witnesses), had ample opportunity to present her own evidence at the June 29 hearing, and never proffered any argument as to how proceeding on June 9 compromised her ability to oppose the custody motion.[4] *Compare State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 201 (a party's absence from a hearing may be harmless error).

**{¶32}** The first assignment of error is without merit.

**{¶33}** In her second assignment of error, Morgan argues that the magistrate erred by ordering the exchange of the minor children at the commencement of Morgan's parenting time to occur "in the parking lot of the Giant Eagle Supermarket located at 4700 Belmont Avenue, Youngstown" with the proviso that "neither parent shall exit his/her vehicle at the time of the exchange." Morgan contends the order is unreasonable in light of the Order of Protection issued in Mahoning County requiring Sassya to "not be present within 500 feet of her." Morgan maintains that the magistrate should have ordered exchanges to occur at the Youngstown Police Department. Appellant's brief at 10.

**{¶34}** We find no abuse of discretion. There is no evidence or allegation that Sassya has threatened or menaced Morgan during prior exchanges of the minor children. There was an incident which occurred at a Sam's Club and resulted in Morgan contacting the police and children's services. This incident involved the minor children

---

4. In her Objections to the Magistrate's Decision, Morgan claimed she was "denied the right to produce witnesses' testimony." On the contrary, she did not have the right to produce witnesses during Sassya's presentation of his case in support of the motion and, on June 29, she did have the opportunity to present witnesses in opposition to the motion. Morgan has never identified the witnesses she would have had testify on June 9, explained why they were unavailable on June 29, or proffered what their testimony would have been.

rather than Morgan and, as found by the magistrate, did not constitute an incident of abuse or neglect. The order regarding custody exchanges does not provide for any direct contact between parties and further stipulates that "[a]ny necessary communication between the parties regarding the minor children shall be through the parties' oldest adult son, [H.S.]."[5] Nothing in the record before this court suggests that Morgan has or will be prejudiced by custody exchanges at Giant Eagle.

{¶35} The second assignment of error is without merit.

{¶36} In the third assignment of error, Morgan argues that, "**at no point** [during the June 29 hearing] **was Appellant permitted to give a narrative of her testimony**," rather, she "was first cross-examined by the magistrate and then [by] the remaining parties" and, "whenever [she] would attempt to interject her own version of events, a multitude of objections were sustained since during those parts of the proceedings examination of other witnesses was to be occurring." Accordingly, Morgan was denied due process.

{¶37} We disagree. Evidence Rule 614(B) ("[t]he court may interrogate witnesses, in an impartial manner, whether called by itself or by a party") allows a trial judge or magistrate to question witnesses "as long as the questions are relevant and do not suggest a bias for one side or the other." *Patrick v. Patrick*, 7th Dist. Carroll No. 17 CA 0913, 2017-Ohio-9380, ¶ 43. The exercise of a judge or magistrate's discretionary ability to question witnesses to aid both the court and pro se litigants develop relevant testimony has been expressly approved by several courts. *Rick's Foreign Exchange*

---

5. The Order of Protection expressly states that it refrains from "making any orders allocating parental rights and responsibilities" on account of the pendency of the present proceedings. *Compare State v. Price*, 118 Ohio St.3d 144, 2008-Ohio-1974, 886 N.E.2d 852, ¶ 20 ("[d]epending upon how a divorce decree allocates parental rights and responsibilities, it may modify multiple aspects of the CPO beyond the paragraphs dealing with parental rights and visitation").

*Co. v. Greenlee*, 2d Dist. Montgomery No. 26096, 2014-Ohio-4505, ¶ 34; *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, 951 N.E.2d 1123, ¶ 26 (12th Dist.); *Paulding-Putnam Cooperative, Inc. v. Kuhlman*, 117 Ohio App.3d 156, 162-163, 690 N.E.2d 52 (3d Dist.1997).

{¶38} In the present case, the magistrate was sensitive to the fact that Morgan was proceeding pro se and proposed the following procedure to Morgan:

> Today is your opportunity to present your case. * * * In order to help it go smoothly, I will help you the best I can under the law because I know you cannot do this as easily and as efficiently as a seasoned lawyer. * * * I take it ma'am, you're going to testify right? [Morgan: Yes.] Okay. In order to help you testify, I will ask the questions. Okay? [Morgan: Thanks.] You answer me. And that will get you through your testimony. Then at the end I will ask you if you have anything else you want to add. All right? [Morgan: Yes.] But when I ask you a question, I'm just not asking you a question for the heck of it. I'm asking you a question that will either help you and/or your children. That's what I'm trying to do here.

Additionally, the magistrate asked for and marked any exhibits Morgan wished to introduce into evidence.

{¶39} The magistrate proceeded to question Morgan regarding the children's living conditions, their education, their relationship with Sassya and their siblings, the Mahoning County protection orders, issues involving visitation with the children, her own physical and mental health, and her concerns that Sassya abuses the children. After questioning Morgan, the magistrate inquired, "what else do you have to tell me?" Morgan expressed her concern that the children continue to be a part of her life and not think of her as "the bad person" because she "left dad." The magistrate again asked, "are you finished" and Morgan answered affirmatively.

13

**{¶40}** It is evident that it was neither the intent nor the effect of the magistrate's questioning of Morgan to deprive her of the opportunity to present her own narrative testimony. Rather, the magistrate was ensuring a proper record existed on which to rule. He explained his intent to Morgan and obtained her consent before questioning her. He gave her ample opportunity to supplement her testimony with her own narrative.[6] At no point during the hearing or at its conclusion did Morgan object that she had additional testimony that she was not allowed to present. *State v. Williams*, 11th Dist. Trumbull No. 97-T-0148, 1998 WL 964576, *8 ("[t]he failure to object [to the court's questioning of a witness] generally constitutes a waiver of any error on appeal"); *State v. Davis*, 79 Ohio App.3d 450, 455, 607 N.E.2d 543 (1992).

**{¶41}** Having found no deprivation of due process, the third assignment of error is without merit.

**{¶42}** In the fourth assignment of error, Morgan claims the magistrate erred by prohibiting her from calling the minor child, Sa.S., as a witness. She argues that "there's nothing in the law * * * which prohibits a party from calling a child to testify as a **fact witness**" and that "there were countless events and incidents described by the witnesses which Sa.S. has personal knowledge of." Appellant's brief at 12. Morgan, however, failed to proffer testimony in order to preserve the error for the record.

**{¶43}** Following her own testimony, Morgan advised the court that Sa.S. (age 12 at the time of the hearing) was present and that she wished to ask her daughter some questions. The magistrate refused, advising that "I do not want to call her." The

---

6. Morgan was also allowed some latitude in her cross-examination of Sassya and the Guardian ad Litem to address additional topics such as the alleged existence of black mold in Sassya's home and differences of religion in the two households.

14

magistrate continued: "I don't want to put children through that. This is hard enough for those children." Morgan replied, "it is" and "I agree."

**{¶44}** We acknowledge that several courts have allowed children to testify as fact witnesses in divorce proceedings. *Buckmaster v. Buckmaster*, 4th Dist. Highland No. 13A13, 2014-Ohio-793, ¶ 18 ("reliance upon an unwritten local rule" and/or "enforcement of a blanket rule disallowing child testimony in domestic matters * * * result[s] in a deprivation of due process"); *but see Glimcher v. Glimcher*, 29 Ohio App.2d 55,  278 N.E.2d 37 (10th Dist.1971) ("[w]e do not condone the practice of a parent causing minor children to testify against the other parent in a divorce action"). Nevertheless, the decision remains discretionary with the trial court.

**{¶45}** In the present case, Morgan raised no objection to the magistrate's decision not to allow Sa.S. to testify and agreed with the magistrate's reasoning that such experience would "do more damage than good." Given the factual circumstances of the present case, this conclusion is sound. *Gramsz v. Gramsz*, 8th Dist. Cuyahoga Nos. 49276 and 49280, 1985 WL 6886, *5 (where "[b]oth boys were questioned extensively by the referee and the guardian ad litem * * * [t]here was no compelling need to inject them in the adversarial role of witness for or against one of the parents"). Moreover, not only did Morgan fail to preserve the issue for review, she made no proffer regarding what Sa.S. would have testified to. In the absence of such a proffer, it has been held that a party cannot demonstrate the prejudice necessary to justify reversal. *Moser v. Moser*, 72 Ohio App.3d 575, 579-580, 595 N.E.2d 518 (3d Dist.1991).

**{¶46}** The fourth assignment of error is without merit.

15

**{¶47}** In the fifth and final assignment of error, Morgan asserts that the magistrate's finding that she "continuously and willfully denied the Plaintiff-Father's right to parenting time in accordance with the Court's orders" is against the manifest weight of the evidence. Rather than being intentional, Morgan claims she "was simply seeking to protect the children of the parties from undue corporal punishment and other acts of [Sassya] during the time that she was seeking a protection order concerning such in a different jurisdiction." Appellant's brief at 14-15.

**{¶48}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Citation omitted.) *Eastly v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. Being "mindful of the presumption in favor of the finder of fact," the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Citations omitted.) *Id.* at ¶ 21, 20.

**{¶49}** There is no real question that Morgan denied Sassya visitation with the minor children; the issue remaining is whether such denial was justified in light of her fears that he was abusing the children. The magistrate concluded that the denial was willful and we defer to that determination. We note that the magistrate cited to an abundance of competent and credible evidence in support of his decision including: the lack of criminal abuse or neglect charges and/or substantiated allegations of abuse against Sassya; Dr. Kayne's opinion that the children's statements regarding abuse

16

were untrustworthy; the testimony of H.S. and Y.S. that the minor children have not been abused; a lack of evidence to corroborate Morgan's allegations; and his own estimation of the witnesses' credibility. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) ("an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge").

**{¶50}** We further note that "[i]t is well-established that interference with the noncustodial parent's visitation rights may constitute a change of circumstances warranting a change of custody." *Jackson v. Herron*, 11th Dist. Lake No. 2003-L-145, 2005-Ohio-4046, ¶ 26 (cases cited); *Murray v. Murray*, 11th Dist. Portage No. 2017-P-0070, 2018-Ohio-3242, ¶ 38.

**{¶51}** The fifth assignment of error is without merit.

**{¶52}** For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

17