**[Cite as *Campbell v. Campbell*, 2023-Ohio-3896.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

MOLLIE CAMPBELL,                          :

    Plaintiff-Appellant,              :    CASE NO. 22CA3992

    v.                                :

JOSHUA CAMPBELL,                          :    DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.               :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for Appellant.

Joshua Campbell, pro se[1].

_____

CIVIL CASE FROM COMMON PLEAS COURT, DOMESTIC RELATIONS DIVISION
DATE JOURNALIZED:10-19-23
ABELE, J.

{¶1} This is an appeal from a Scioto County Common Pleas Court, Domestic Relations Division, judgment that found Mollie Campbell, plaintiff below and appellant herein, in contempt. Appellant assigns three errors for review:

    FIRST ASSIGNMENT OF ERROR:

    "THE COURT ERRED WHEN IT FOUND MOTHER IN CONTEMPT."

    SECOND ASSIGNMENT OF ERROR:

    "THE COURT ERRED WHEN IT MODIFIED THE

---

[1] Appellee did not file a brief and did not participate in this appeal.

PARTIES' PARENTING TIME SCHEDULE."

THIRD ASSIGNMENT OF ERROR:

"THE COURT ERRED WHEN IT ESTABLISHED CHILD
SUPPORT AND FAILED TO FIND FATHER IN
CONTEMPT FOR NON-PAYMENT OF SUPPORT."

{¶2} This appeal arises from a contentious divorce proceeding that the parties have litigated for over seven years. The parties married in 2011 and are the parents of two children, M.C. (DOB March 1, 2012) and K.C. (DOB September 21, 2013). On April 29, 2016, appellant filed a complaint for divorce against appellee, Joshua Campbell.

{¶3} On May 11, 2016, pursuant to the parties' agreement, the trial court: (1) designated appellant the residential parent for the minor children, (2) granted appellee parenting time on alternating weekends and every Wednesday, (3) granted equal time for holidays and two weeks for summer vacations, (4) designated one child to each party as a dependent for tax purposes, (5) ordered appellee to maintain medical insurance, and (6) ordered appellee to pay appellant "pursuant to the agreement of the parties and downward deviation in the amount of $800.00/month plus 2% processing charges to the Scioto County Child Support Enforcement Agency (CSEA) by wage withholding order effective April 29, 2016." The trial court's final decree incorporated,

approved, and adopted the parties' agreement.

{¶4} On February 10, 2017, appellee, through counsel, filed a motion to modify the residential parent designation and a motion for money judgment. On April 19, 2017, appellee filed a contempt motion for denial of visitation and another motion to modify the residential parent designation.

{¶5} On June 27, 2017, the parties entered into a Memorandum of Agreement that designated appellant the custodial parent and established parenting time. In addition, the parties, inter alia, agreed to: (1) terminate child support on September 1, 2017, (2) have appellee open a college savings account and contribute $200 per month per child, and (3) have appellee deposit $200 per month per child into a checking account for the children's benefit. The trial court's July 13, 2017 judgment recognized that the parties agreed to resolve all matters and adopted the June 27, 2017 agreement.

{¶6} On March 26, 2020, appellant filed: (1) a motion to modify the prior court order and alleged that appellee relocated to Florida, failed to provide notice to her or to the court, and visited the children sporadically, (2) a motion for contempt of court and alleged that appellee failed to pay into the college savings account and the checking account in violation of the

July 13, 2017 order, and (3) a motion to modify child support.

{¶7} On May 1, 2020, appellee filed: (1) a pro se motion to modify parental rights and responsibilities, (2) a proposed shared parenting plan, (3) a motion for contempt for interference with parenting time, (4) a motion to modify parenting time, and (5) a motion to modify child support, medical support, tax exemption and other child-related expenses. On May 6, 2020, appellee filed another pro se motion for contempt and alleged interference with parenting time. On May 26, 2020, appellee filed another contempt motion and alleged interference with parenting time.

{¶8} At the June 11, 2020 hearing, appellee appeared pro se. Because appellee failed to provide his witness list and exhibits in a timely manner pursuant to both the Civil Rules and Local Rules of Procedure, the court offered to either continue the hearing to provide appellant and her counsel the opportunity to review the exhibits, or to allow appellee to proceed without referencing the exhibits. Appellee chose to proceed.

{¶9} The trial court indicated that, because appellant's contempt motion jeopardized appellee's liberty, appellee is entitled to appointed counsel. Consequently, the court bifurcated the proceedings and only addressed appellant's other

March 26, 2020 motions to modify a prior court order, child support, and appellee's contempt motions.

**{¶10}** Appellant testified that the July 13, 2017 order established, inter alia, parenting time, and explained that in the summers of 2017-2019 appellee exercised the week-on-week-off summer schedule as per the agreement. However, in January 2020 appellee relocated to Florida without notice. Appellant argued that the move necessitated a change in the parenting schedule because appellee's parenting time had been sporadic after his relocation. Appellant requested that appellee have the children three non-consecutive weeks in the summer, follow local rules for major holidays (but with 14-day notice appellee could visit the children in Ohio), and appellee be responsible for travel expenses. Appellant further testified that appellee owes $13,200 in the agreed payments and requested a conventional CSEA child support order.

**{¶11}** The trial court noted that none of appellee's three contempt motions (May 1, May 6, or May 26) listed specific incidents or time frames. Appellee attempted to cross-examine appellant about the contempt motions, but did not reference the specific motion or the specific dates that, he alleged, appellant interfered with his visitation. The court then issued

a summer visitation schedule and continued other issues until appellee retained counsel.

{¶12} On July 9, 2020, the trial court entered an interim order that states that at the June 11, 2020 hearing, appellant presented her case-in-chief and rested. When appellee requested a continuance to seek counsel, the court granted the motion and stated that the matter would begin at the point where the June 11, 2020 hearing ended.

{¶13} At the September 3, 2020 hearing, the trial court indicated that "when we adjourned the last time we were here which was on the 6th of June of this year, Mollie Campbell had just finished her case-in-chief * * * [and] we are at the point for Mr. Campbell's case to be presented." Appellee, now represented, testified that he lived in Ohio at the time of the divorce, but moved to Florida after a work-related injury and because his new father-in-law offered appellee's wife employment in Florida. Appellee earned $65,000 when he last worked in 2018, but had no income since then. Because of his lack of income, appellee explained he is in arrears in his payments. However, appellee still provided insurance for the children because his former employer granted a two-year grace period, to

expire on January 1, 2021. Appellee requested appellant insure the children after January 1, 2021, and, if not possible, the parties equally divide health coverage costs. Appellee requested the court terminate the college account and the checking account payments as requested in the previous order and instead calculate traditional child support. In addition, appellee requested shared parenting. Appellee also sought additional time in the summer with the children and offered to pay transportation costs. Appellee testified that appellant does not provide advance notice regarding medical situations and does not permit him to exercise parenting time, when appellant refuses to comply with the parenting time allocation, appellee stated he filed contempt motions because he does not have shared parenting. In addition, appellee (1) explained he and his wife plan to return to Ohio when he obtains "medical clearance," and (2) requested the court order the parties to communicate via the Family Wizard app and offered to pay the fee. On cross-examination, appellee conceded he owed $4,600 as of June, and no accounting of the college savings accounts had occurred.

{¶14} On October 27, 2020, the trial court denied appellee's motion for shared parenting. The court determined that none of the best interest factors applied, or were properly before the

court, because of "no change in circumstances of the residential parent or the children, and this was not a shared parenting case." The court retained appellant as the residential parent and indicated that appellee could have parenting time one week during the school year, as well as half of the Thanksgiving and Christmas breaks from school and the entire spring break. Further, the court ordered parenting time on Father's Day, two weeks in June, two weeks in July, one week in August, and ordered that appellee could have weekend time in Ohio when he is in Ohio "provided he has a safe place for them to visit, with 14 days advance notice." The court also ordered the parties to use Family Wizard to communicate. Because appellee is unemployed due to an injury, the court terminated the previous support order, did not find appellee in contempt for nonpayment due to his inability to work, but did, however, find appellant in contempt for her "willful and repeated denial of [appellee's] parenting time."

{¶15} November 6, 2020, appellee filed a motion for contempt and alleged that appellant failed to share equally in the fees for the Family Wizard program and failed to use the program for communications as ordered. Appellant filed a motion for findings of fact and conclusions of law and a motion for stay of

final judgment. The trial court granted the stay, ordered both parties to submit proposed findings of fact and conclusions of law, and stated that the court would hear the contempt motion at a later date.

{¶16} On April 14, 2021, appellee filed a pro se motion for contempt and alleged that appellant denied visitation and violated the trial court's June 27, 2017 final divorce decree. On April 20, 2021, appellee filed a pro se motion to show cause why appellant should not be held in contempt for a violation of the court's June 27, 2017 final divorce decree.

{¶17} On May 28, 2021, appellee, represented by counsel, filed a motion for contempt and alleged that appellant willfully denied parenting time from May 30, 2021 through June 6, 2021 in violation of the court's July 13, 2017 order. On June 1, 2021, appellee, represented by counsel, filed another motion for contempt and alleged that appellant willfully denied parenting time from May 30, 2021 through June 6, 2021, in violation of the court's July 13, 2017 order.

{¶18} At the June 3, 2021 hearing, appellee testified that since 2018, appellant denied him 61 days of parenting time. Appellee explained that he paid for tickets to return to Florida with both children after the hearing and requested $750 in

attorney fees, $50 in fuel, and $547.17 in airline tickets. Appellee further testified that the parties did not divide all holidays, appellee did not receive the children from 8:00 p.m. Christmas Eve to 11:00 a.m. Christmas morning in odd-numbered years, and appellee did not receive parenting time for vacations, even though he provided appellant 30 days notice. Appellee also requested the court lift the stay on the court's previous order for two weeks in June, two weeks in July, and one week in August.

**{¶19}** Appellant testified that she has been more than accommodating and tried to minimize school absences. Appellant also acknowledged she failed to obtain passports for the children as per the order four years prior. The trial court's June 16, 2021 entry states that after the hearing, the parties agreed to parenting time for June, July, and August 2021.

**{¶20}** On June 30, 2021, the trial court (1) denied appellant's motion for contempt, and (2) found appellant in contempt for her "blatant interference with [appellee's] parenting time but agrees with [appellant] that the court's order of 2017 must be modified." The court thus adopted appellee's conclusions of law, ordered appellant to continue as the residential parent and set forth a parenting schedule. The

court terminated the child support order and stated it is "particularly concerned about the poor communication between the parties and considers the behavior between them not only contemptuous but simply childish."

**{¶21}** On October 13, 2021, the trial court journalized a memorandum of agreement. On October 25, 2021, the court entered an agreed judgment that: (1) appellee shall withdraw all pending motions without prejudice, (2) the attached findings of fact and conclusions of law shall be incorporated in the judgment entry that adopts this memorandum of agreement, (3) scheduled appellant's sentencing for contempt on December 9, 2021, and (4) equally divided court costs.

**{¶22}** On April 7, 2022, appellee, through counsel, filed a motion in limine and a motion to impose penalties. At the April 8, 2022 hearing on the motion in limine and motion to impose penalties, the parties discussed that appellant had been found in contempt on October 27, 2020. Appellee's counsel, in fact, argued that the court had found appellant in contempt three times, but did not issue a sanction. To purge the contempt, appellee requested 33 days of parenting time (proposed in December 2021), travel expenses of $99.47, and attorney fees. Appellant argued, however, that the April 14, 2021 hearing did

SCIOTO, 22CA3992

not conclude and appellant had no opportunity to submit testimony and evidence.

**{¶23}** On April 18, 2022, the trial court sentenced appellant to serve ten days in jail and pay a $250 fine. Appellant could, however, purge the contempt if she: (1) provides 33 days of make-up parenting time to be exercised prior to September 1, 2022, (2) complies with the current parenting time schedule as set forth in the October 25, 2021 entry, and (3) pays $1,034.47 for appellee's transportation and transcript costs. On May 5, 2022, appellant requested a stay of the July 6, 2021, October 25, 2021, and April 8, 2022 judgments pending appeal. On May 9, 2022, appellee filed a motion contra and a request to schedule dates of parenting time.

**{¶24}** At this juncture, appellee's counsel withdrew. On June 24, 2022, appellee filed a pro se motion for emergency ex parte order for post-judgment temporary custody and parenting time under R.C. 3127.18. Appellee's motion claimed that he and the children "are in immediate danger. I have received death threats and I have been repeatedly stalked by Mollie Williams * * * Mollie's domestic violence towards me keeps progressing and is not only dangerous to the children physically, but mentally and emotionally as well." Appellee attached text messages to

his motion.

**{¶25}** On June 10, 2022, appellee filed for an injunction for protection against cyber stalking/violence against appellant in the Circuit Court of the Fifteenth Judicial Circuit in Florida. The Florida court, however, denied the petition in view of Ohio's original jurisdiction. In addition, on June 24, 2022 appellant filed an ex parte motion to modify parenting time. On June 29, 2022, appellee filed a motion for an emergency ex parte order for summer parenting time.

**{¶26}** On May 5, 2022, appellant filed a notice of appeal of the judgments entered on April 18, 2022 (sentenced appellant on contempt from October 27, 2020, June 30, 2021, and October 25, 2021), on October 25, 2021 (agreed entry indicated appellee to withdraw all pending motions without prejudice, attached Findings of Fact and Conclusions of Law to be incorporated into the judgment, costs divided equally, and setting sentencing for contempt), and on July 6, 2021 (found appellant in contempt "for her blatant interference with [appellee's] parenting time").

I.

**{¶27}** In her first assignment of error, appellant asserts

SCIOTO, 22CA3992

the trial court erred when it found her in contempt[2]. In particular, appellant contends that the court denied her due process when it found her in contempt related to three pro se motions that failed to state with particularity the grounds for the motions. See Civ.R. 7(B)(1).

{¶28} "Contempt of court" is defined as the disobedience or disregard of a court order or a command of judicial authority. *Montgomery v. Montgomery,* 4th Dist. Scioto No. 03CA2923, 03CA2925, 2004-Ohio-6926, ¶ 11; R.C. 2705.02(A). It involves conduct that engenders disrespect for the administration of justice or which tends to embarrass, impede or disturb a court in the performance of its function. *Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). Civil contempt exists when a party fails to do something ordered by the court to benefit an opposing party. *Montgomery, supra.* Usually, contempt proceedings in domestic relations cases are indirect and civil in nature because they aim to coerce or encourage future compliance with the court's orders and their

---

[2] In the case at bar, appellee did not file a brief. Under such circumstances, this Court may choose to accept appellant's statement of facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App.R. 18(C). We, however, will review the merits of this appeal.

concern centers on behavior that occurs outside the court's presence. *Flowers v. Flowers,* 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972. Interference with visitation is typically punished by civil contempt, *id.; Mascorro v. Mascorro*, 2d Dist. Montgomery No. 17945, 2000 WL 731751 (Jun.9, 2000), as is the failure to pay child support. *Dressler v. Dressler*, 12th Dist. Warren Nos. CA2002-08-085 & CA2002-11-128, 2003-Ohio-5115, ¶ 14.

**{¶29}** "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of the order." *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf,* 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 13. Clear and convincing evidence must support a civil contempt finding. *See Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610. Clear and convincing evidence is the level of proof that would "cause a trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Once the plaintiff establishes a violation, the defendant bears the burden to prove an inability to comply, and absent that proof, a contempt finding is appropriate. *Burks v. Burks*, 2d Dist.

Montgomery No. 28349, 2019-Ohio-4292, ¶ 22.

{¶30} Generally, a trial court possesses broad discretion when it considers a contempt motion. *Burchett v. Burchett,* 4th Dist. Scioto No. 16CA3784, 2017-Ohio-8124, ¶ 19, *Jones v. Jones,* 4th Dist. Highland No. 20CA3, 2021-Ohio-1498, ¶ 28; *State ex rel. Cincinnati Enquirer v. Hunter,* 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29. Thus, absent an abuse of discretion, an appellate court will ordinarily uphold a trial court's contempt decision. *E.g., Burchett* at ¶ 19; *Welch v. Muir*, 4th Dist. Washington No. 08CA32, 2009-Ohio-3575, ¶ 10. An abuse of discretion is "'an unreasonable, arbitrary or unconscionable use of discretion * * *.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶31} In the case sub judice, appellant asserts that the trial court denied her due process when it found her in contempt that related to three pro se motions that did not provide her with sufficient notice of her alleged transgressions. In particular, appellant argues that the motions failed to state the grounds with sufficient particularity. Civ.R. 7(B)(1). Appellant points out that all three pro se motions (May 1, 2020,

May 6, 2020, and May 26, 2020) used the Supreme Court of Ohio Uniform Domestic Relations Form 21, but only state that appellant should be held in contempt for "interference with parenting time or other parenting time orders filed on June 27, 2017." The forms did not provide information regarding the specific dates or times that appellant allegedly interfered with appellee's parenting time. In fact, at the June 11, 2020 hearing on the contempt motions, the trial court stated, "the Supreme Court forms that I personally very much dislike cause it * * * doesn't give you a reason to state for contempt. It just says the other person's in contempt I think."

{¶32} Appellant also points out that, at the June 11, 2020 hearing, the trial court ruled that appellee could not submit exhibits or call witnesses because he failed to provide discovery in a timely manner. Appellant points out that because the trial court did not make a specific finding of the acts appellant committed that formed the basis of the contempt ruling, she requested findings of fact and conclusions of law. The same day, November 6, 2020, appellee filed yet another motion for contempt that the court did not hear. Appellant, however, alleges that the court simply adopted appellee's proposed conclusions of law that did not identify specific dates

or acts.

**{¶33}** Appellant further argues that, before the trial court issued a final ruling regarding the 2020 motions, in 2021 appellee filed two additional contempt motions. Appellant contends that the trial court referenced the 2021 hearings in its entry, but suggests that the court considered testimony from the still-in-progress June 3, 2021 hearing. Moreover, at the October 2021 hearing, appellee withdrew his 2021 contempt motions. Thus, at the April 2022 hearing appellant's counsel argued, "there was nothing in the record to find her in contempt on. There were no dates permitted to be testified about. The motions were not permitted to be testified about." The court, nonetheless, sentenced appellant to serve a suspended ten-day jail sentence, pay a $250 fine, and pay appellee's transportation costs and transcript fees.

**{¶34}** Appellant further asserts that, although the October 27, 2020 judgment states that appellant could avoid a sanction if the court is satisfied that appellant provided appellee "sufficient" make-up parenting time, appellant's counsel points out appellant was "without clear direction on how many days that she needed to purge," and "with the confusion of this case, we're really unclear as to what parenting time order exists."

SCIOTO, 22CA3992

The trial court determined that appellant could provide appellee with 33 make-up days to purge the contempt finding, but appellant argues that the court did not permit her to testify regarding the dates that the court provided to appellee to purge, then calculated the number of days to purge from appellee's withdrawn April 14, 2021 motion. Consequently, appellant argues that the court did not have the authority to find appellant in contempt for acts alleged to have occurred in 2021.

{¶35} We recognize that, although it does appear that both parties have struggled to abide by court orders, after our review we believe that the trial court's finding of contempt on this very confusing and ever changing record is unreasonable. Although we greatly sympathize with the court's unenviable task of sorting through the multitude of motions, confusing testimony and arguments, many of which appear to be repetitive and filed for no specific purpose, courts must afford due process to individuals accused of contempt. *McCall v. Cunard,* 6th Dist. Sandusky No. S-07-013, 2008-Ohio-378, ¶ 20. Due process for contempt proceedings includes providing the alleged contemnor with notice of the allegations and an opportunity to be heard on those allegations. *State v. Hochhausler,* 76 Ohio St.3d 455,

459, 668 N.E.2d 457 (1996); R.C. 2705.03.  During a contempt hearing, a court must consider the charge, hear the testimony, the answer, and any explanation the accused offers, then determine whether violations have occurred.  *In re J.M.*, 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 49.

**{¶36}** Although R.C. 2705.02 does not specify the form of notice an alleged contemnor must receive, "to comply with due process requirements, [the notice] must be given sufficiently in advance of scheduled court proceeding so that the [contemnor] has reasonable opportunity to prepare for *the specific issues presented*."  *Sassya v. Morgan,* 11th Dist. Trumbull No. 2018-T-0013, 2019-Ohio-1301, ¶ 28 (emphasis added).  *See also State ex rel. Johnson v. County Court of Perry County*, 25 Ohio St.3d 53, 495 N.E.2d 16 (1986).  More significantly, for notice to comply with due process requirements, it must "set forth the alleged misconduct with particularity."  *Sassya* at ¶ 28.

**{¶37}** Turning to the case sub judice, we believe that appellee's May 1, 2020, May 6, 2020, and May 26, 2020 contempt motions failed to provide sufficient notice so that appellant could formulate a defense.  After our review, we also agree with appellant's assessment that the trial court may have permitted

testimony concerning parenting time disputes for purposes other than contempt, but used that testimony to support a contempt finding, including, it appears, some allegations from a motion that the court noted appeared to be still pending in 2021, then later withdrawn. Moreover, we agree with appellant that the trial court did not permit appellant to be adequately heard regarding her efforts to comply with the court's prior orders. However, we again sympathize with the trial court in this matter having been placed in an unenviable position with multiple motions and responses that tend to confuse the issues rather than to provide clarity.

Therefore, after our review we conclude that the trial court acted unreasonably when it found appellant in contempt related to appellee's pro se motions. Accordingly, we sustain appellant's first assignment of error and reverse the trial court's judgment.

II.

**{¶38}** In her second assignment of error, appellant asserts that the trial court erred when it modified the parties' parenting time schedule. In particular, appellant notes that

the trial court did not refer to R.C. 3109.051, which governs

parenting time when there is no shared parenting decree, or the

R.C. 3109.051 best interest factors.

{¶39} A post-decree motion to modify parenting time, when no

shared parenting plan exists, is governed by R.C. 3109.051. As

appellant asserts, although a trial court is not required to

explicitly refer to all the best interest factors, it must be

apparent from the record that the court considered those

factors. *Todd v. Todd,* 4th Dist. Athens No. 18CA26, 2019-Ohio-

1466, ¶ 14, quoting *Sarchione-Tookey v. Tookey,* 4th Dist. Athens

No. 17CA41, 2018-Ohio-2716, ¶ 32. R.C. 3109.051(D) provides:

(D) In determining whether to grant parenting time to a
parent pursuant to this section or section 3109.12 of
the Revised Code or companionship or visitation rights
to a grandparent, relative, or other person pursuant to
this section or section 3109.11 or 3109.12 of the Revised
Code, in establishing a specific parenting time or
visitation schedule, and in determining other parenting
time matters under this section or section 3109.12 of
the Revised Code or visitation matters under this
section or section 3109.11 or 3109.12 of the Revised
Code, the court shall consider all of the following
factors:

(1) The prior interaction and interrelationships of the
child with the child's parents, siblings, and other
persons related by consanguinity or affinity, and with
the person who requested companionship or visitation if
that person is not a parent, sibling, or relative of the
child;

(2) The geographical location of the residence of each
parent and the distance between those residences, and if

SCIOTO, 22CA3992

the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected

child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶40}** In the case at bar, other than the trial court's reference to appellee moving far from his previous residence and the parties' contentious relationship, our review reveals that the trial court may not have sufficiently considered the appropriate statutory factors. Once again, however, we recognize that the trial court had an unenviable task to attempt to navigate through this contentious proceeding.

**{¶41}** Accordingly, based upon the foregoing reasons, we sustain appellant's second assignment of error.

### III.

**{¶42}** In her final assignment of error, appellant asserts that the trial court erred when it established child support and failed to find appellee in contempt for non-payment of support.

**{¶43}** An appellate court must use the abuse of discretion standard when reviewing matters related to child support. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Once again, the abuse of discretion standard implies that a court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). *See, also, Masters v. Masters*, 69 Ohio St.3d 83, 85,

630 N.E.2d 665 (1994).

{¶44} "It is well established in the law of Ohio * * * that a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order." *Stychno v. Stychno*, 11th Dist. Trumbull No. 2008-T-0117, 2009-Ohio-6858, ¶ 38, citing *Courtney v. Courtney*, 16 Ohio App.3d 329, 334, 475 N.E.2d 1284 (3d Dist.1984). "Once a person seeking contempt has demonstrated a defendant's failure to pay child support, the burden of proof shifts to the defendant to prove his or her inability to pay." *Smith v. Smith*, 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶ 41; *see State ex rel. Cook v. Cook*, 66 Ohio St. 566, 64 N.E. 567 (1902), paragraph one of the syllabus ("In a proceeding in contempt against a party who has refused to comply with a money decree for alimony, it is not essential that the complaint allege that the party is able to pay the money. The decree imports a finding of the court that he is able to pay, and the burden is on him by allegation and proof to establish his inability."); *Liming v. Damos*, 133 Ohio St.3d 509,2012-Ohio-4783, 979 N.E.2d 297, ¶ 20.

{¶45} In the case sub judice, appellant contends that appellee did not provide documentation of his inability to pay, testified at varying points during the hearing that he had no

income and he could not afford counsel, but later stated he is enrolled in online college classes and agreed to pay expenses for the children to travel to and from his Florida home. Appellant further argues that the court (1) did not make findings about appellant's future ability to work, and (2) should have requested documentation before it imputed minimum wage to him for child support purposes.

**{¶46}** Initially, we recognize that the trial court ordered child support, but the parties later agreed to a nonconventional child support process. In particular, the parties agreed that appellee must: (1) open a 529 college savings account for each child, (2) deposit $200 per month per child into that account, and (3) contribute $200 per month per child into a checking account for their benefit. At the June 11, 2020 hearing, appellee appeared pro se, testified that he was behind in these payments, and asked the court to terminate their prior agreement and calculate traditional CSEA child support. Appellee also testified that he could not work due to a work-related injury and provided no income documentation.

**{¶47}** We recognize that appellee provided somewhat inconsistent testimony that he could not pay child support, but could pay for college classes and transportation costs for the

SCIOTO, 22CA3992

children.  Moreover, much of appellee's testimony is not supported by any documentation concerning financial status. Consequently, we believe that the trial court acted unreasonably and should have fully considered the parties' financial positions before it rendered judgment on this issue.

{¶48} Accordingly, based upon the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed and the cause remanded for further proceedings consistent with this opinion. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.